UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:03CV-268-R

GEORGE W. SCHLEGEL, III                                        PLAINTIFF

v.

GARY CRAFT, RICH LIEBE, and
the CITY OF HOPKINSVILLE                                      DEFENDANTS


**MEMORANDUM OPINION**

Defendants have moved for summary judgment (Dkt. # 14). Plaintiff responded (Dkt. # 16), Defendants replied (Dkt. # 17) and this matter is now ripe for decision. For the reasons given below, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**.

**BACKGROUND**

On June 24, 2003, the City Council ("Council") of the City of Hopkinsville, Kentucky ("City"), held a meeting that was open to the public. Defendant Rich Liebe, the mayor of Hopkinsville, presided over the meeting, in which Defendant Gary Craft, a council member, was participating. Plaintiff Schlegel, a Hopkinsville citizen, was in the audience due to his interest in a vote on the City's budget that was scheduled to be held at that meeting. Specifically, it appears that Mr. Schlegel took an interest in funding for Pride, Incorporated, a community beautification organization; at the meeting, the Council voted against funding for Pride, Incorporated.[1] After

---

[1]The parties disagree as to whether the vote was on a motion to reduce funding for Pride, Incorporated or simply against an *increase* in the organization's funding; in any case, the

1

that vote, Mr. Craft asked a City police officer to remove Mr. Schlegel, allegedly because Mr. Craft felt that Mr. Schlegel was acting in a threatening manner and disrupting the meeting. The officer did so, and on December 1, 2003, Mr. Schlegel filed this action under 42 U.S.C. § 1983, alleging that Defendants Craft and Leibe, acting in their individual capacities and on behalf of the City, wrongfully ejected him from the meeting, thereby violating his constitutionally-guaranteed rights to freedom of speech, political expression, assembly and association. The defendants then filed a motion for summary judgment, arguing that the removal was a reasonable regulation of Mr. Schlegel's behavior and therefore not a violation of Mr. Schlegel's constitutional rights, and alternatively that qualified immunity protects Defendants Craft and Liebe from liability for any violation.

### STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case."

---

outcome of the vote was disadvantageous to the group.

*Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of the evidence.  To support his position, he must present evidence on which the trier of fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

### Municipal and Official Capacity Liability

As an initial matter, the Court will address Mr. Schlegel's claims against the City of Hopkinsville and against Defendants Craft and Leibe in their official capacities.  A claim of municipal and official capacity liability is also, of course, subject to the basic requirements of any § 1983 claim; the analysis of whether Mr. Schlegel's claims meet these requirements will be the same for municipal/official capacity liability as it is for individual capacity liability, and is addressed in the next section.  This section will only address the issue of whether, if there is § 1983 liability in this case, it may lie against the City of Hopkinsville and Defendants Liebe and Craft in their official capacities.

3

According to the Supreme Court's decision in *Monell v. Department of Social Services*, municipal governments may only be held liable for injuries resulting from the municipality's unconstitutional or illegal policies; they may not be sued under a theory of *respondiat superior*. *Monell v. Dep't of Social Services* 436 U.S. 658, 691 (1978).  After *Monell*, a number of Supreme Court cases set forth some of the types of actions which can constitute official policy. Under these cases, there are at least five types of actions that can constitute such a policy: (i) direct action by the municipal legislative body[2]; (ii) actions by agencies exercising authority delegated from the legislative body (as in *Monell*); (iii) actions by individuals possessing final decision-making authority (as in *Pembaur v. City of Cincinnati*, 475 U.S. 269 (1986)); (iv) actions demonstrating a policy of inadequate training or supervision[3]; and (v) actions falling within a demonstrable "custom" of organizational behavior that causes constitutional violations.[4]

Mr. Schlegel needs to present evidence of at least one of these five types of action in order to withstand the summary judgment motion on his claims against the City of Hopkinsville and against Defendants Craft and Liebe in their official capacities.  Mr. Schlegel alleges that Defendants Liebe and/or Craft were final decision-makers as to the issue of when to eject someone from a city council meeting, subjecting them to official capacity liability and causing the City of Hopkinsville to be jointly liable.  As to the act of a final decision-maker, the Supreme Court has held that "where action is directed by those who establish governmental policy, the

---

[2]"No one has ever doubted...that a municipality may be liable under §1983 for a single decision by its properly constituted legislative body..." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

[3]*See, e.g.*, *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

[4]*See Pembaur*, 475 U.S. at 482, n.10 (quoting *Monell*).  The Supreme Court has consistently maintained this possibility, although it has not upheld a §1983 action on this basis.

municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *Meyers v. City of Cincinnati*, 14 F3d 1115, 1117-1118 (6th Cir. 1993). As to the question of whether a given municipal official is a final policymaker, the Court must look to state law. *Feliciano v. City of Cleveland*, 988 F. 2d 649, 655 (citing *Prapotnik* at 125) (6th Cir. 1993). Under the Hopkinsville ordinances governing the conduct of public meetings, the responsibility for maintaining order (as well as the authority to take action to do so) is granted to the "presiding officer." City of Hopkinsville Local Ordinance §31.22(A). That provision includes authority to "order the removal of any person who becomes disorderly, or impose such other punishment as the legislative body determines." *Id.* At the meeting in question, the evidence indicates that Defendant Liebe, as mayor, was the presiding officer.

The evidence as to how exactly Mr. Schlegel was ordered to be removed is somewhat unclear. Several witnesses testified that Mayor Liebe took part in the removal (either directly by ordering it or indirectly by stating that, upon Mr. Craft's request, Mr. Schlegel would have to be removed). Mr. Craft, on the other hand, states that he and he alone ordered the police officer present at the meeting to remove Mr. Schlegel. Therefore, a material issue of fact remains about the extent of Mayor Liebe's participation, if any, in the removal of Mr. Schlegel. That inquiry is in part a question of fact and requires evaluation of credibility, making it appropriate for determination by a jury at trial, not by the Court. If the jury finds that Mayor Liebe ordered the removal or ratified Mr. Craft's order, then such an order or ratification constituted official policy for which the city may appropriately be held liable (if a constitutional violation occurred) because, as presiding officer, Mayor Liebe is a final decision-maker for Hopkinsville in this

context.[5]  To demonstrate that Mayor Liebe ratified Mr. Craft's decision, Mr. Schlegel "must prove that [he] did more than play a passive role in the alleged violation or showed [*sic*] mere tacit approval of the goings on."  *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989) and *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir.1993)).  Mr. Schlegel "must show that [Mayor Liebe] otherwise encouraged or condoned the actions of" Mr. Craft.  *Id.* (citing *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995)).  Even implicit participation by Mayor Liebe may give rise to this liability: "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [employees]."  *Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir. 1982).  Due to the disputed and varying versions of the facts in this case, summary judgment on the issue of municipal liability is inappropriate.

As to the official capacity claims, however, summary judgment is appropriate.  As the Supreme Court in *Monell* stated: suits against individual government officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent."  436 U.S. 690 n.55.  "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985)).  Because the City of Hopkinsville was separately named and has had notice and an opportunity to respond, the official capacity claims against Mayor

---

[5]Defendants correctly note that "...mere acquiescence in a single discretionary decision by a subordinate is not sufficient to show ratification."  *Feliciano*, 988 F.2d 655.  However, Mr. Craft did *not* in fact have discretion to act, so Mayor Liebe's actions, whatever a finder of fact might determine them to have been, cannot be considered the "mere acquiescence" contemplated in *Feliciano*.

Liebe and Mr. Craft are unnecessary and should be dismissed.

**Individual Capacity Liability**

Mr. Schlegel has also brought suit against Defendants Craft and Leibe in their individual capacities.  In order to state a claim for relief under 42 U.S.C. § 1983, Mr. Schlegel "must present two elements: (1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899 (6th Cir. 2003) (citing *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).  Defendants' summary judgment motion rests on their argument that Mr. Schlegel has not demonstrated the deprivation of a right secured by the Constitution.

The determination of whether Mr. Schlegel has been deprived of such a right turns on whether or not the restriction placed on his speech - i.e., his removal from the council meeting - was a "reasonable time, place and manner restriction[]." *Heffron v. International Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Adderley v. Florida*, 385 U.S. 39, 47-48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966); *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); and *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941)).  Supreme Court cases have established a system in which different levels and kinds of restrictions are permissible on different types of government property: "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983); see also  *Kincaid v. Gibson*, 236 F.3d 342 (6th Cir.2001).  The three

7

categories of property are: (1) "quintessential public forums," which have the strictest limits on government regulation of speech; (2) forums "opened for use by the public as a place for expressive activity;" and (3) property "not by tradition or designation a forum for public communication," in which the most substantial regulations are allowed. *Id.* at 45-46.

As our sister court in *Jocham v. Tuscola County* held, "[a] city council meeting is the quintessential limited public forum." 239 F.Supp.2d 714, 728 (E.D. Mich., 2003). As to this type of forum, the *Perry* court held that

> [a]lthough a state is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum. Reasonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest.

460 U.S. 46, citing *Widmar v. Vincent*, 454 U.S. 263, 269-270, 102 S.Ct. 269, 274. The first issue, then, is whether the regulation in question in the case at bar was content-based or content-neutral. Which test applies depends upon whether the regulation is content-based or content-neutral.

Defendants argue that, because Mr. Schlegel did not speak on the issue of the funding for Pride, Incorporated, the city officials involved could not have known his viewpoint and therefore could not have been regulating its speech on the basis of its content. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Attachment # 1 to Dkt. # 14, at 15.) Plaintiff argues that, given the conflicting testimony about his behavior at the meeting, there is an issue of material fact about whether he was ejected on the basis purely of allegedly disruptive behavior or whether the fact that he was expressing disapproval for one or more of the funding decisions made by the Council motivated his removal.

The evidence in the record presents as many different versions of Mr. Schlegel's and Mr.

Craft's behavior as there were witnesses to it.  Mr. Craft's testimony indicates that he based his decision to seek to remove Mr. Schlegel from the situation on the fact that he observed Mr. Schlegel fidgeting in his chair, mumbling and cursing under his breath, and making extended direct eye contact with at least one other council member in a way that both that council member, Rose Thorpe, and Mr. Craft believed to have been threatening.  He testified that he "felt [Mr. Schlegel] was being very disruptive" and that Mr. Schlegel "was unhappy and at this point anything could happen."  (Deposition of Gary Craft, Attachment # 4 to Dkt. # 14, at 16.)

Mr. Schlegel, however, contends that he did not: "make any gestures of any type toward any person;" "make direct eye contact with any member of the Hopkinsville city council in an effort to intimidate, threaten, alarm or otherwise disturb any councilperson;" "use any profane language or make any profane gesture."  (Affidavit of George W. Schlegel III, Attachment # 3 to Plaintiff's Response to Motion for Summary Judgment, at 1-2.)  Mr. Schlegel states that "[a]fter the motion to reduce funding for PRIDE was passed, I murmured in a low voice, 'That's stupid,' simply to express my dissatisfaction with the council's vote."  *Id.* at 2.  Further, Mr. Schlegel asserts that he did not call the city council members "sick" or use certain profanity as alleged by Mr. Craft.  *Id.*

Viewing the facts in the light most favorable to Mr. Schlegel, he was displeased with the vote, and Mr. Craft was aware of the connection between the action taken by the Council and Mr. Schlegel's displeasure.  Nevertheless, he expressed his displeasure quietly to his wife, seated next to him, but did not make the eye contact or profane comments suggested by Council members Thorpe and Craft. In any case, there are material issues of fact relating to Mr. Schlegel's speech; without a determination of those factual issues, the character of the regulation

9

cannot be determined.

If the jury finds that Mr. Schlegel's removal was based upon the content of his expression (i.e., the fact that he was expressing disagreement with the Council's decision not to fund Pride, Incorporated), the regulation violated Mr. Schlegel's constitutional rights because it does not satisfy the heightened standard of scrutiny which applies to such regulations.  "The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 295, 104 S.Ct. 3065, 3070, 82 L.Ed.2d 221 (1984)).  "Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" *Id.*, quoting *Community for Creative Non-Violence*, *supra*, 468 U.S., at 293, 104 S.Ct., at 3069.  If the jury finds that Mr. Craft and/or Mayor Liebe removed Mr. Schlegel on the basis of disruptive behavior, the regulation would be content-neutral.  If the jury accepts the facts as set forth by Mr. Schlegel that his behavior was not disruptive and finds that Mr. Craft and/or Mayor Liebe removed him because he was expressing displeasure with the Council's vote, the regulation would be content-based.  A content-based regulation would have to be "necessary to serve a compelling state interest and ... narrowly drawn to achieve that end." *Perry*, *supra*, 460 U.S., at 45 (citing *Carey v. Brown*, 447 U.S. 455, 461, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980)).  In this case, if the jury finds that the regulation was content-based, it will be because it found that Mr. Schlegel's behavior at the meeting was not disruptive.  Therefore, even if the governmental interest in conducting orderly

meetings of its bodies is a compelling one for constitutional purposes as a general matter,[6] Mr. Schlegel's removal cannot have been necessary to serve that interest.

If, however, the jury finds that the regulation was content-neutral, the regulation must still be reasonable. *Perry*, 460 U.S. at 46. To be reasonable, a time, place and manner regulation must be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* at 45. Whether the regulation of Mr. Schlegel's speech meets such requirements is dependent upon the facts found by the jury. The Court cannot say as a matter of law that, even if Mr. Schlegel's behavior was disruptive enough to cause the regulation to have been content-neutral (i.e., legitimately aimed at curbing disruptive behavior rather than at limiting speech), it may not have been so mildly disruptive as to make the regulation of it unreasonable. That is, the jury may find the facts not to be as Mr. Schlegel describes them (his behavior was not at all disruptive) or as Mr. Craft describes them (Mr. Schlegel was "very disruptive"), but in a no-man's land in which the decision to expel Mr. Schlegel from the meeting, somewhat disruptive conduct notwithstanding, was unreasonable. Therefore, summary judgment on the issue is inappropriate.

**Qualified Immunity**

---

[6]Defendants cite the discussion in *Jones v. Heyman*, *supra*, in which the Eleventh Circuit Court of Appeals held that the Supreme Court "has recognized the significance of the government's interest in conducting orderly, efficient meetings of public bodies." 888 F.2d, at 1332. For this proposition, the *Jones* court cites language from a footnote in the Supreme Court's opinion in *City of Madison, Joint School Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 169 n. 8, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976), in which the court noted that "...public bodies may confine their meeting to specified subject matter and may hold nonpublic sessions to transact business." That was highly relevant to the situation facing the *Jones* court but it is not clear to the Court that this translates into a general statement of a compelling interest in conducting orderly meetings.

11

Defendants claim that, even if Mr. Schlegel has stated a viable claim for a violation of his constitutional rights, they are entitled to qualified immunity from this suit.  The crux of the qualified immunity doctrine is that officials performing discretionary functions are not subject to being sued for their conduct if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978) and *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975)).  To determine whether a given official is entitled to qualified immunity, the Court must apply a three-part test:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff[] show[s] that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.  For a right to be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Shamaeizadeh v. Cunigan*, 338 F.3d 535, 545-46 (6th Cir. 2003) (internal citations and quotation marks omitted). Viewed in the light most favorable to Mr. Schlegel, the facts indicate that a constitutional violation did occur.  Defendants rest their argument that the right was not clearly-established on the *Jones* decision: "...the actions of Craft and Liebe certainly appeared to be lawful under the decision in *Jones* and other decisions recognizing that a government may impose reasonable time, place, and manner regulations on speech."  (Defendants' Motion for Summary Judgment, Dkt. # 14, at 21.)  However, the analogy to *Jones* is a faulty one in the qualified immunity context because the Court must examine the facts in the light most favorable to Mr. Schlegel.  Neither *Jones* nor any other case the Court has discovered suggests that a

12

person may be removed from a city council meeting, thus preventing her from exercising her constitutionally-guaranteed right to free expression, when she has not acted disruptively.  As to the third prong, the objective reasonableness test, the Court is required to determine "on a fact-specific, case-by-case basis ... whether a reasonable official in the defendants' position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed."  *Pray v. City of Sanduski*, 49 F.3d 1154, 1158 (6th Cir. 1995), citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) and *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994).  Again viewing the facts in the light most favorable to Mr. Schlegel, no reasonable official in the Defendants' position could believe that removing a person from a meeting who was not disruptive is a lawful action.  Therefore, Mayor Liebe and Mr. Craft are not entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**.  An appropriate order shall issue.

13